Gachette v Leak (2019 NY Slip Op 04142)





Gachette v Leak


2019 NY Slip Op 04142


Decided on May 29, 2019


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on May 29, 2019
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

REINALDO E. RIVERA, J.P.
CHERYL E. CHAMBERS
JEFFREY A. COHEN
ANGELA G. IANNACCI, JJ.


2016-10188
 (Index No. 6676/11)

[*1]Marie Gachette, respondent, 
v
Lee Leak, Jr., etc., et al., defendants, New York Community Hospital, et al., appellants.


Bréa Yankowitz P.C., Floral Park, NY (Arthur I. Yankowitz and Patrick J. Bréa of counsel), for appellants.
Kramer, Dillof, Livingston & Moore, New York, NY (Matthew Gaier and Ran Mukherjee of counsel), for respondent.



DECISION & ORDER
In an action, inter alia, to recover damages for medical malpractice, the defendants New York Community Hospital and Fouad Bouharb, sued herein as Harb Fouad Bou, appeal from an order of the Supreme Court, Kings County (Marsha L. Steinhardt, J.), dated July 18, 2016. The order, insofar as appealed from, denied that branch of those defendants' motion which was for summary judgment dismissing the cause of action alleging medical malpractice insofar as asserted against them.
ORDERED that the order is affirmed insofar as appealed from, with costs.
On January 12, 2010, the plaintiff was found lying on the sidewalk by the police and was taken by ambulance to the defendant Brookdale Hospital. According to hospital records, the plaintiff arrived at Brookdale Hospital at approximately 10:29 p.m. on January 12, 2010, and left against medical advice at approximately 1:20 a.m. on January 13, 2010. The plaintiff arrived at the defendant New York Community Hospital at approximately 1:35 a.m. on January 13, 2010, and was triaged at 1:39 a.m. The defendant Fouad Bouharb, sued herein as Harb Fouad Bou (hereinafter Bouharb), was the emergency room physician who treated the plaintiff at New York Community Hospital.
At approximately 1:52 a.m. on January 13, 2010, Bouharb ordered a CT scan of the plaintiff's head. The resulting preliminary radiology report, prepared at 2:13 a.m. that day, indicated that the plaintiff had a left intraventricular hemorrhage with obstructive hydrocephalus and questionable left hemispheric subarachnoid hemorrhage, and that the findings had been discussed with the ordering clinician. Bouharb documented the results of the report at 2:32 a.m. His impression was that the plaintiff needed immediate neurosurgical intervention, and that she needed to be transferred to a facility with neurosurgical capabilities. Despite the request of the plaintiff's family that she be taken to Maimonides Medical Center, an ambulance was ordered to transport the plaintiff to the defendant New York Methodist Hospital.
The ambulance arrived at New York Community Hospital at approximately 3:37 a.m. [*2]on January 13, 2010, and it arrived at New York Methodist Hospital with the plaintiff at approximately 4:05 a.m. The plaintiff was intubated between 4:18 a.m. and 4:40 a.m., and the emergency room attending physician at New York Methodist Hospital, the defendant Melissa Ralston, with whom Bouharb had spoken at or before 3:01 a.m., then contacted the on-call attending neurosurgeon for New York Methodist Hospital, the defendant Martin Zonenshayn. Bouharb never spoke with Zonenshayn. Zonenshayn, not being on site at the hospital, had a 25-minute drive to New York Methodist Hospital and left for the hospital as soon as he received Ralston's call.
Zonenshayn arrived at New York Methodist Hospital no later than 5:40 a.m. on January 13, 2010. Thereafter, Zonenshayn proceeded with a ventriculostomy, with anesthesia starting at 6:02 a.m. and the ventriculostomy beginning at 6:23 a.m. Zonenshayn strongly suspected that the cerebral vascular cause for hemorrhaging was aneurysmal, and in January 2010, New York Methodist Hospital did not have the capabilities of ruling out or treating a brain aneurysm. The plaintiff was thus transferred to Maimonides Medical Center, where she arrived at approximately 4:00 p.m. on January 13, 2010. At Maimonides Medical Center, the plaintiff underwent an endovascular embolization of a left vertebral artery aneurysm that was complicated by an aneurysm rupture. The plaintiff remained at Maimonides Medical Center until February 12, 2010, when she was discharged to a rehabilitation center.
The plaintiff commenced this action, alleging, among other things, medical malpractice. In an order dated July 18, 2016, the Supreme Court, inter alia, denied that branch of the motion of New York Community Hospital and Bouharb (hereinafter together the moving defendants) which was for summary judgment dismissing the cause of action alleging medical malpractice insofar as asserted against them. The moving defendants appeal.
In order to establish liability for medical malpractice, a plaintiff must prove that the defendant deviated or departed from accepted community standards of practice, and that such departure was a proximate cause of the plaintiff's injuries (see Gross v Friedman, 73 NY2d 721, 722-723; Stukas v Streiter, 83 AD3d 18, 23-24; Heller v Weinberg, 77 AD3d 622, 622). A defendant seeking summary judgment dismissing a complaint alleging medical malpractice "must make a prima facie showing that there was no departure from good and accepted medical practice or that the plaintiff was not injured thereby" (Stukas v Streiter, 83 AD3d at 24; see Jagenburg v Chen-Stiebel, 165 AD3d 1239, 1239; Kelly v Rosca, 164 AD3d 888, 891; Williams v Bayley Seton Hosp., 112 AD3d 917, 918). Where the defendant has satisfied that burden, a plaintiff must then "submit evidentiary facts or materials to rebut the defendant's prima facie showing" (Stukas v Streiter, 83 AD3d at 30; see Jagenburg v Chen-Stiebel, 165 AD3d at 1239-1240; Kelly v Rosca, 164 AD3d at 891; Williams v Bayley Seton Hosp., 112 AD3d at 918). General allegations of medical malpractice, which are merely conclusory and unsupported by competent evidence, are insufficient to defeat a motion for summary judgment (see Alvarez v Prospect Hosp., 68 NY2d 320, 325).
Here, the moving defendants met their prima facie burden by submitting, inter alia, the affirmations of two medical experts, who opined that the care and treatment rendered by the moving defendants was appropriate in all respects and was not, in any event, a proximate cause or contributing factor to any of the plaintiff's alleged injuries (see Jagenburg v Chen-Stiebel, 165 AD3d at 1240; Lesniak v Stockholm Obstetrics & Gynecological Servs., P.C., 132 AD3d 959, 961; Williams v Bayley Seton Hosp., 112 AD3d at 919).
However, in opposition, the plaintiff raised triable issues of fact. Specifically, the plaintiff's experts raised a triable issue of fact as to whether, upon being advised of the CT scan findings at 2:13 a.m., Bouharb's failure to ensure that a neurosurgical evaluation occurred within two hours was a breach of the standard of care. The plaintiff further raised a triable issue of fact as to whether Bouharb's failure to directly contact Zonenshayn, the neurosurgeon, also resulted in additional delay and was a departure from accepted medical practice. Furthermore, the plaintiff raised a triable issue of fact as to whether the moving defendants' failure to send the CT scan films to New York Methodist Hospital caused delay, and whether, based on the CT scan conducted by the moving defendants, the plaintiff should have been transferred directly to a hospital equipped to provide treatment for a ruptured aneurysm, such as Maimonides Medical Center. Thus, the plaintiff [*3]raised triable issues of fact, in effect, with regard to whether the moving defendants departed from accepted standards of practice in failing to properly transfer the plaintiff so as to ensure timely and proper neurosurgical evaluation and treatment and as to whether such departures were a proximate cause of the plaintiff's alleged injuries (see Lesniak v Stockholm Obstetrics & Gynecological Servs., P.C., 132 AD3d at 961; Breland v Jamaica Hosp. Med. Ctr., 49 AD3d 789, 790; Menzel v Plotnick, 202 AD2d 558, 559; see also Lang v Newman, 12 NY3d 868, 870).
Accordingly, we agree with the Supreme Court's determination to deny that branch of the moving defendants' motion which was for summary judgment dismissing the cause of action alleging medical malpractice insofar as asserted against them.
RIVERA, J.P., CHAMBERS, COHEN and IANNACCI, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court